BETSY BRACY BRITT AND ROBERT DIXON BRITT v. BILLY B. BRITT AND PEGGY G. BRITT, JOINTLY AND SEVERALLY, AND MAGNOLIA HILL INC.

No. 566PA86

(Filed 3 September 1987)

**1. Quasi Contracts and Restitution §§ 1.2, 5— operation of farm—recovery for value of services—mortgage payments, improvements**

In an action for restitution and fraud arising from the operation by plaintiffs of a farm owned by defendants, plaintiff Betsy Britt introduced evidence which, if believed, entitles her to restitution for any damages she might prove. The trial court erred in admitting evidence of the reasonable value of plain-

Britt v. Britt

tiff's services where there was evidence of two contracts between the parties, so that plaintiff was either operating the farm as her own business or had made an express contract for her pay. However, plaintiff would be entitled to compensation for payments made by her on the indebtedness of the farm if the jury should find that it was not part of the contract between the parties that the payments should be made from the gross income of the farm, but would not be entitled to compensation for payments made after she was told to leave the farm. Moreover, plaintiff is entitled to recover for expenditures for improvements to the farm if the jury should find that the expenditures were made not as normal business expenses in running the farm but were made by plaintiff from her own funds or from funds she should have been allowed to keep from the operation of the farm.

### 2. Fraud § 12— operation of farm—evidence insufficient

The Court of Appeals correctly ruled that there was insufficient evidence to support a claim for fraud arising from the operation by plaintiffs of a farm owned by defendant where the evidence did not show that a promise by defendant to put stock in a corporation in plaintiff Betsy Britt's name if she stayed on the farm was a misrepresentation of a material fact; plaintiff did not show a loss to herself by staying on the farm; and there was no evidence that plaintiff was damaged by not receiving stock because the evidence did not show the purpose for which the corporation was to be organized or that it was ever organized, and did not show the value of the stock.

Justices MITCHELL and WHICHARD did not participate in the consideration or decision of this case.

ON discretionary review of a decision of the Court of Appeals, 82 N.C. App. 303, 346 S.E. 2d 259 (1986), reversing a judgment for plaintiff entered at the 6 February 1985 session of Superior Court of ORANGE County, *Bowen (Wiley F.), Judge*, presiding. Heard in the Supreme Court 11 May 1987.

The plaintiff Betsy Britt brought this action, seeking to impose a parol trust on certain real property or for restitution for benefits bestowed by her on the defendants and for damages, including punitive damages, for fraud. Robert Dixon Britt was made a party plaintiff after the action was filed.

The plaintiffs' evidence showed that in 1977 the two plaintiffs were working as Amway distributors for Billy Britt. Robert or Bobby Britt and Billy Britt are brothers. In August 1977, Billy Britt purchased a farm in Orange County known as Magnolia Hill Farm which had been operated as a horse farm since 1972. It was agreed that Bobby and Betsy Britt would occupy the farm. Billy Britt promised Betsy and Bobby that when they "hit the diamond

level" of Amway sales, he would convey the farm to them if they would repay to him his investment in the farm. It was agreed that Bobby and Betsy would "repair and maintain the farm . . . and operate the stable business to carry the farm." They were to live on the farm and retain any surplus income as compensation. Shortly after the plaintiffs went on the farm, Billy Britt delivered to Betsy Britt a payment book of the Orange Savings and Loan Association. According to the payment book monthly payments of $378.63 were due on a note secured by a deed of trust on the farm. Billy told Betsy that the payments on this debt were to be paid from the income from the farm. He also told her that she was to pay from the farm income $1,033.63 per month on a purchase money note secured by a second deed of trust on the farm.

After the plaintiffs had worked on the farm for approximately eighteen months, Betsy asked Billy to put their agreement in writing. She testified as follows:

> [H]e said that that wasn't necessary, he was a man of his word and that wasn't going to happen; and he said well maybe, I said, "I'm putting so much money in the farm and all and I'd like some kind of protection." He said, "Maybe we'll just make you an employee or something." And at that point, I had already put money in the farm and I didn't really want to be an employee from that point on; and I knew that the farm based on what the mortgage payments there was no way that I could be paid because everything I was making, I was putting back into the farm. So I said, "No, I don't want to do that." And he said, "Well we'll work it out." And I said, "How will we work it out?" He said, "Well," he said, "I'm forming a corporation and how would you feel about having accruing stock in the corporation each time you made a mortgage payment, then you would be accruing more stock?" So I thought well stock is paper, you know, and I assumed though that the stock was relative to the property, relative to the actual real estate. And I didn't know much about stock or anything; but I know there would be something on paper; and so I was satisfied with that.
>
> . . .
>
> Q. Did you trust him at that point?
> A. Yes.

Q. Okay. So what did you do as a result of that conversation?

A. I just kept making the mortgage payments and kept putting more, you know, money into the farm and just going about my usual routine.

No stock was issued to Betsy Britt. There was evidence that the plaintiffs made mortgage payments of $98,126.00. There was also evidence that they expended $40,469.95 in repairs and maintenance of the property. An expert witness was allowed to testify that the reasonable value of the personal labor and services that Betsy performed for the business ranged from $224,415.00 to $338,833.00. There was also evidence that during Betsy's tenure at Magnolia Hill the fair market value of the property increased from $175,000.00 to more than $337,500.00.

In 1983 the marriage of the plaintiffs deteriorated. They were separated and Billy demanded that Betsy leave the farm. She did so and filed this action.

The superior court submitted to the jury the claims for a parol trust, unjust enrichment and fraud. The jury answered the issue against the plaintiffs on their claim for a parol trust. The jury answered the issue favorably to the plaintiff Betsy Britt on her claim for unjust enrichment and awarded her $363,616.00. They answered the issue on the claim for fraud favorably to the plaintiff Betsy Britt and awarded her $1.00 in compensatory and $400,000.00 in punitive damages.

The defendants appealed from a judgment on the verdict and the Court of Appeals reversed. The Court of Appeals held there was not sufficient evidence to support a claim of unjust enrichment or fraud. It ordered the superior court to enter a judgment dismissing the case. This Court allowed discretionary review.

*Womble, Carlyle, Sandridge & Rice, by Carole S. Gailor, for plaintiff appellant Betsy Bracey Britt.*

*Faison, Brown, Fletcher & Brough, by Charles Gordon Brown and William D. Bernard and Ward & Smith, P.A., by Robert D. Rouse, Jr., and Donalt J. Eglinton, for defendant appellees.*

WEBB, Justice.

The plaintiffs did not appeal from the judgment dismissing their claim for a parol trust and that question is not before us.

[1]   The appeal of the plaintiff Betsy Britt brings to the Court questions involving unjust enrichment and fraud. The Restatement of Restitution § 1 lays down the general principle that "a person who has been unjustly enriched at the expense of another is required to make restitution." In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable. *See* E. Allan Farnsworth, *Contracts* § 2.20. *Wells v. Foreman*, 236 N.C. 351, 72 S.E. 2d 765 (1952), says that the defendant must have consciously accepted the benefit. A claim of this type is neither in tort nor contract but is described as a claim in quasi-contract or a contract implied in law. A quasi-contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment. If there is a contract between the parties the contract governs the claim and the law will not imply a contract. *Concrete Co. v. Lumber Co.*, 256 N.C. 709, 124 S.E. 2d 905 (1962).

In this case we believe the plaintiff Betsy Britt has introduced evidence which, if believed, entitles her to restitution for any damages she may prove. The defendant Billy Britt promised the plaintiffs he would convey the farm to them when they "hit diamond." That was an oral promise and unenforceable under the statute of frauds. N.C.G.S. § 22-2. There was no evidence that the plaintiffs "hit diamond" and the plaintiffs could not have compelled a conveyance for this reason. The unenforceable contract does keep the plaintiffs' action in making improvements to the farm from being officious. Neither of the plaintiffs was a volunteer in making improvements because they could reasonably expect that they would be paid for them if the farm was not conveyed to them. The defendant Billy Britt was aware of any improvements as they were made. *Wells*, 236 N.C. 351, 72 S.E. 2d 765.

In her proof of damages, the plaintiff Betsy Britt introduced expert testimony as to the reasonable value of her services. It was error to allow this testimony. In this case, the evidence showed there were two contracts between the parties. One of the contracts was to convey the farm when the plaintiffs "hit diamond." There was another contract for the operation of the farm. There is some dispute about this. The plaintiff Betsy Britt contends she was the owner of the farm operation. Billy Britt contends that Betsy worked for him and that her compensation was to be allowed to live in the house rent free and to retain any surplus income from the farm operations. If Betsy operated the farm as her own business, the value of her services were of no consequence to Billy Britt. He should not have to pay for them. If Betsy Britt worked for Billy in operating the farm, she made an express contract with him for compensation. She was to live in the house rent free and receive all surplus income from the farm. She made an express contract for her pay and the law will not imply one for her. *Concrete Co.*, 256 N.C. 709, 124 S.E. 2d 905 and *Supply Co. v. Clark*, 247 N.C. 762, 102 S.E. 2d 257 (1958). For this reason it was error to let the jury consider the reasonable value of her services.

Betsy Britt also introduced evidence of payments on the indebtedness on the farm to show Billy Britt was unjustly enriched by the payments. There was a conflict in the evidence as to these payments. The plaintiff Betsy Britt contends that in the agreement between the parties these payments were not intended to be paid from the gross income from the farm. If the jury should find it was not part of the contract between the parties that the payments should be paid from the gross income, Betsy's compensation was reduced by making payments for the defendant Billy Britt and she would be entitled to compensation for these payments which unjustly enriched Billy Britt. There was evidence that she continued making the payments after she was told to leave the farm in March 1984. Betsy would not be entitled to damages for payments after she was told to leave the farm. She would be acting officiously in making payments after she was told to leave.

The plaintiffs also introduced evidence that Betsy expended $40,460.99 in making improvements on the farm. If the jury should find that the expenditures were made not as normal

business expenses in operating the farm but were made by Betsy from her own funds or funds she should have been allowed to keep from the operation of the farm, the plaintiffs should recover for such expenditures. The measure of damages should be the amount the expenditures have enhanced the value of the farm. *Wright v. Wright*, 305 N.C. 345, 289 S.E. 2d 347 (1982) and *Jones v. Sandlin*, 160 N.C. 150, 75 S.E. 1075 (1912).

[2] The plaintiffs also obtained a judgment against the defendants based on fraud. The elements of fraud are: (1) the defendant's false representation of a past or existing fact, (2) defendant's knowledge that the representation was false when made or it was made recklessly without any knowledge of its truth and as a positive assertion, (3) defendant made the false representation with the intent it be relied on by the plaintiff, and (4) the plaintiff was injured by reasonably relying on the false representation. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). Evidence of a promise which is not fulfilled is not sufficient to support a finding of a false representation unless the evidence shows the promisor made the promise with no intention of fulfilling it. *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E. 2d 760 (1961).

The plaintiff Betsy Britt contends that in a conversation by telephone with her, Billy Britt made a promise to her that he had no intention of keeping, that he made this representation to keep her working on the farm and making the mortgage payments, and that she reasonably relied on this false representation to her injury. She contends the false promise was made when she asked Billy Britt to put their contract in writing and he told her he was forming a corporation and asked how she would like to be issued stock in the corporation each time she made a payment on the loan. She contends she relied on this promise and stayed on the farm to her injury.

Although the defendant Billy Britt did not specifically promise to put stock in a corporation in Betsy Britt's name if she stayed on the farm, the jury could infer that is what he meant when he said "how would you feel about accruing stock in the corporation each time you made a mortgage payment . . .?" If the defendant did not intend to keep this promise at the time it was made, this would be the misrepresentation of a material fact. The only evidence that he did not intend to keep the promise is that

no stock was issued to Betsy Britt. In *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364 (1942), the plaintiff's evidence showed that she released a deed of trust based on a promise by the defendant to execute a note secured by a second deed of trust. The defendant refused to execute a note or a second deed of trust. This Court affirmed a judgment of involuntary nonsuit. The Court said, "Mere proof of nonperformance is not sufficient to establish the necessary fraudulent intent." *Vincent v. Corbett*, 244 N.C. 469, 94 S.E. 2d 329 (1956), contains the same holding. We are bound by *Williams* and *Vincent* to hold that the evidence fails to show that the promise by Billy Britt was a misrepresentation of a material fact. All Betsy has shown is nonperformance.

We also hold there was not sufficient evidence that the plaintiff Betsy Britt was injured by relying on the representation. We have held that Betsy cannot recover in unjust enrichment for the value of her services in managing the farm because she was paid for those services pursuant to an express contract. By the same token, she cannot say she was injured by relying on a promise to her which caused her to continue working on the farm when she received compensation to which she had agreed for the employment. The plaintiff Betsy Britt also contends that she was injured by making the payments on the farm indebtedness and for the repairs and maintenance when she relied on Billy Britt's representation. We do not believe Betsy Britt has shown she was injured by making these payments. The funds to make these payments were generated by farm operations. If Betsy had not stayed on the farm she would not have had these funds. She has not shown a loss to her by staying on the farm after her conversation with Billy Britt.

The appellant contends she has been injured by not receiving the stock in the corporation Billy Britt told her he was forming. This argument raises the question of whether the plaintiff in a claim for fraud may recover damages for the loss of a bargain. As far as we can determine, this is a question of first impression in this jurisdiction. There have been cases from other states dealing with this problem. *See* Prosser and Keeton, *Law of Torts*, Ch. 18 § 110 (5th ed. 1984). The plaintiff has not sued for breach of contract which she could have done for the failure of Billy Britt to have the stock issued to her. Her claim is for fraud. The gravamen of a claim for fraud is the damage to a person for a change in

position based on the reliance on a false statement. The damage is caused by this change of position and not the lost bargain. There is a split among the jurisdictions which have decided this question. A majority allows damages for the lost bargain as well as for the change in position. A minority limits damages to that caused by a change in position.

We do not have to choose in this case between the majority and minority rules. All jurisdictions which have passed on the question hold that loss of bargain damages must be proved with reasonable certainty before they are allowed. *Id.* In this case there is no evidence that Betsy Britt was damaged by not receiving stock. The evidence does not show for what purpose the corporation was to be organized or that it ever was organized. There is no evidence as to the value of the stock. Betsy Britt has not shown she was damaged by the failure to receive stock.

For the reasons stated in this opinion there must be a new trial on the issue of unjust enrichment. We affirm the Court of Appeals in regard to the claim for fraud. We remand this case to the Court of Appeals for remand to the Superior Court of Orange County for further proceedings consistent with this opinion. The decision of the Court of Appeals is

Affirmed in part, reversed and remanded in part.

Justices MITCHELL and WHICHARD did not participate in the consideration or decision of this case.