60 F.3d 821
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 R. Gerald BUTLER, Plaintiff-Appellee,
v.
WINNER INTERNATIONAL CORPORATION, Defendant-Appellant.
 No. 94-1792.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 3, 1995.
Decided: July 17, 1995.
 
 ARGUED: John Handy Culver, III, KENNEDY, COVINGTON, LOBDELL & HICKMAN, L.L.P., Charlotte, NC, for Appellant.
 James Richard Glover, GLOVER & PETERSEN, P.A., Chapel Hill, NC, for Appellee.
 ON BRIEF: Ann B. Petersen, GLOVER & PETERSEN, P.A., Chapel Hill, NC; Ronald L. Chapman, MURPHY & CHAPMAN, P.A., Charlotte, NC, for Appellee.
 Before MURNAGHAN, WILLIAMS, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellee, R. Gerald Butler ("Butler"), was the majority shareholder and chief executive officer of The Electronics Group, Inc. ("TEG"), an electronics assembly business in Charlotte, North Carolina. The case presents a dispute between the appellant, Winner International Corporation ("Winner"), and Butler, arising from a sale of assets contract executed in August 1991, in which Butler, on behalf of TEG, agreed to sell TEG's assets to Winner, and Winner agreed to hire Butler pursuant to a three-year employment contract. The dispute arose when Winner terminated Butler's employment less than six months after the sale of assets contract was executed and only two months into Butler's three-year term of employment.
 
 
 2
 In April 1992, Butler filed a complaint in the United States District Court for the Western District of North Carolina, under diversity jurisdiction, seeking from Winner compensatory damages for breach of his employment contract and for fraudulent inducement into the sale of assets contract. Winner defended on the ground that: (1) its termination of Butler was justified under the employment contract because Butler had engaged in certain misconduct which warranted his termination; and (2) it had made no material misrepresentations to Butler such that it could be held liable for fraud.
 
 
 3
 Trial commenced on December 3, 1993, and on December 9, 1993, the jury returned a verdict in which it found that (1) Winner had breached its employment agreement with Butler, and (2) Butler had been fraudulently induced by Winner to enter into the sale of assets and employment contracts. On December 16, 1993, Winner filed a Rule 50(b) post-verdict motion for judgment as a matter of law, and a Rule 59 motion seeking a new trial on all of the claims. The district court denied Winner's motions by written order on May 13, 1994, and Winner filed a timely notice of appeal on June 9, 1994. We affirm in part and reverse in part.
 
 Factual Background
 
 4
 Butler was employed by Copes-Vulcan in 1961. In the 1980s, Butler, along with other investors, purchased the assets of a Copes-Vulcan operating division to create TEG, a manufacturing company. Butler was employed as the President and Chief Executive Officer of TEG, and was also the majority shareholder, owning 59 percent of the company's shares. By early 1990, TEG began to experience financial difficulties.
 
 
 5
 In early 1991, Butler contacted Winner about the possibility of TEG manufacturing an electronic security device for Winner, and about the possibility that Winner could act as TEG's financial partner. Although an agreement was not reached at that time, Butler contacted Winner again in June of 1991, at which time Winner indicated that it had an interest in a business arrangement with TEG.
 
 
 6
 Accordingly, in July, Winner sent its General Counsel, Tim Shaffer, and Comptroller, James Kaplin, to look over TEG's operations. At the beginning of August, Winner sent Butler a letter indicating an interest in buying TEG's assets, and including a statement of its intent to offer employment contracts to certain TEG employees, including Butler. Additionally, the letter indicated Winner's intent to move TEG's assets to Winner's new facility in Sharon, Pennsylvania.
 
 
 7
 On August 21, 1991, TEG and Winner entered into an Agreement for a Sale and Purchase of Assets. Under the contract, Winner agreed to pay $130,000 for the TEG assets. Additionally, paragraph 12 of the agreement provided that Winner would offer employment contracts to Butler, Kenneth Swonger, Douglas McKenzie, and Stephen Quillen under the following conditions:
 
 
 8
 BUYER hereby agrees that, subsequent to the Closing, BUYER shall offer contracts of employment within the parameters of prior discussions with R. Gerald Butler as to the following individuals;
 
 
 9
 a) R. Gerald Butler;
 
 
 10
 b) Kenneth Swonger;
 
 
 11
 c) Steven Quillen;
 
 
 12
 d) Douglas McKenzie;
 
 
 13
 Said contracts shall be separate and independent from this Agreement and shall be negotiated in good faith subsequent to the Closing Date. The obligations of this Agreement shall not be conditioned upon rejection or acceptance of said employment contracts.
 
 
 14
 Under the sale of assets agreement, Winner and TEG also agreed that, subsequent to the sale of the assets, Winner would lease the assets to TEG for a period of time not to exceed sixty days, so that TEG's existing customer base could be retained and serviced from Sharon, Pennsylvania. During that sixty day period, TEG agreed to be responsible for all expenses associated with the operation and use of the assets sold to Winner, including utilities, rental payments on the manufacturing facility, and payroll expenses. Additionally, the sales agreement required Winner to pay certain amounts to secured creditors to obtain the release of certain liens on the assets; specifically, Winner was to pay $100,000 to the Small Business Administration ("SBA"), $25,000 to White Consolidated Industries, and $5000 for other judgment liens.
 
 
 15
 One week after TEG and Winner entered into the asset purchase agreement, Winner and Butler entered into an employment agreement, dated August 28, 1991, in which Winner agreed to hire Butler as vice president for operations of Winner Technologies, a subsidiary corporation of Winner. The written employment contract was for a term of three years beginning on the earlier of either the date that TEG's lease back of the assets ended or November 1, 1991. Additionally, the employment agreement, in paragraph 5, provided for termination for cause under certain conditions:
 
 
 16
 If (i) the Employee is convicted of a felony, a crime of moral turpitude or any other crime involving the Company ..., or (ii) the Employee is found by the Company to have engaged in Willful Misconduct (as hereinafter defined), willful or gross neglect, fraud, misappropriation or embezzlement, in each case in the performance of his duties here under, the Company may ... immediately terminate the Employee's employment upon the giving of written notice. The Employee shall have no right to receive any compensation or benefit hereunder on and after the date of such termination, other than salary and other benefits earned and accrued prior to the date of termination and reimbursement for expenses incurred prior to the date of termination. "Willful Misconduct" means (a) any material breach of this Agreement or (b) willful failure of the Employee to perform substantially his duties.
 
 
 17
 The contract also contained provisions for Winner's payment of Butler's relocation expenses, health insurance, six month severance pay if terminated without cause, and Butler's agreement to maintain the confidentiality of Winner's business information and to refrain from competing with Winner's business during the term of the contract. Butler began receiving his base salary payments from Winner on November 1, at the end of the sixty day transition period. At that time, the Sharon plant was not ready to begin parallel production.
 
 
 18
 On January 17, 1992, Winner terminated Butler's employment. Winner contended that Butler was justifiably terminated because Butler intended to compete with Winner in the manufacture of a component of a new automobile security system, in violation of the noncompete clause of the employment contract. Butler, by contrast, alleged that he was wrongfully terminated, contending that Winner had never meant to retain him at all for the agreed three-year period, and that he had been promised employment only as a means of fraudulently inducing TEG to sell its assets to Winner.
 
 
 19
 In April 1992, Butler filed a complaint seeking damages from Winner. In particular, Butler's first claim for relief alleged fraud in the inducement, stating that Winner fraudulently induced him to enter into the sale of assets agreement by assuring him that he would be retained by Winner in a long term contract of employment, that a parallel operation would be maintained by Winner to ensure that the existing customer base of TEG would be developed, and that Winner would pay off the balance of TEG's SBA loan (on which Butler and his wife were personal guarantors). In the second claim for relief, the complaint alleged that Winner breached the employment agreement with Butler by firing him without cause in contravention of the terms of the contract. Winner defended on the ground that Butler had been justifiably terminated because Butler had engaged in misconduct which violated the non-compete clause of the employment contract.
 
 
 20
 Trial commenced on December 3, 1993, and on December 9, 1993, the jury returned a verdict, in which it found that (1) Winner had breached the employment agreement with Butler, and (2) Butler was fraudulently induced by Winner to enter into the sale of assets and employment contracts. The jury awarded Butler $347,000 in compensatory damages on the breach of the employment contract claim, $50,000 in compensatory damages on the fraudulent inducement claim, and $353,000 in punitive damages on the fraudulent inducement claim. On December 16, 1993, Winner filed a post-verdict motion for judgment as a matter of law under Rule 50(b), and a Rule 59 motion seeking a new trial on all of the claims. The district court denied Winner's motions by written order on May 13, 1994. Winner filed a timely notice of appeal on June 9, 1994.
 
 
 21
 On appeal, Winner asserts three claims of error, contending that (1) the district court erroneously denied Winner's post-verdict motions on Butler's fraudulent inducement claim, (2) the district court erroneously denied Winner's post-verdict motions on Butler's breach of the employment contract claim, and (3) the punitive damages award assessed against Winner violated the Due Process Clause of the Constitution. We find that while the district court's decision against Winner on the breach of contract claim should be affirmed, its finding against Winner on the fraudulent inducement claim and its dependent punitive damages award should be reversed.
 
 I. Fraud Claim
 
 22
 Winner first assigns error to the district court's finding of fraud, in particular arguing that the decision should be reversed because: (1) Butler lacked standing to allege that he was fraudulently induced to enter into the asset purchase agreement because he was not a party to that agreement;[1] (2) the district court erroneously admitted Butler's testimony concerning oral statements made by Winner in light of the parole evidence rule; (3) Butler's evidence that he was fraudulently induced to enter into the employment agreement was insufficient to support the jury verdict; and (4) the damages awarded were duplicative and unsupported by sufficient evidence. Although we may assume arguendo that the first argument is unavailing here, the arguments concerning insufficiency of the evidence have great merit. Accordingly, we reverse the district court's finding that Winner was liable for fraud.
 
 
 23
 First, we assume that Winner's argument as to lack of standing does not prevail because it is based on a fundamental misunderstanding of the proceedings and claims below. Under North Carolina law, when a person is induced by fraud or undue influence to make a conveyance of his property or to enter into an agreement into which he would not otherwise have entered, a cause of action arises in his favor under a fraud theory. Holt v. Holt, 232 N.C. 497, 61 S.E.2d 448, 452 (1950). In the instant case, Butler's fraud claim, when conceptually simplified, was not based on his standing as a shareholder of TEG who was somehow injured by the sale of TEG's assets to Winner, but was instead based on his being induced, as an individual, into signing a contract which he would not have signed had he not been promised certain things by Winner, including the alleged promise that he would be given a three-year contract of employment with Winner and that his personal guarantee on an SBA loan would be paid off on his behalf. Although it is certainly true that if he was suing for damages done to TEG as a result of fraud, Butler would have no standing except under a shareholder derivative suit, in the instant case, Butler sued for fraud committed on him as an individual, resulting in personal injuries such as a loss of employment. It is only if he was alleging injuries to TEG or to himself as a shareholder, that he would be expected to bring a shareholder derivative suit.[2] Thus, we assume, arguendo, that Butler did have proper standing to bring the claim.
 
 
 24
 Proceeding to Winner's contention that there was insufficient evidence in the record to suggest that Winner committed fraud on Butler, and thus that its Rule 50(b) motion should have been granted by the district court notwithstanding the jury verdict in Butler's favor, we conclude that the district court's decision was unsupported by sufficient evidence in the record.[3] In reviewing a denial of a Rule 50(b) motion for judgment as a matter of law, a trial court's denial should not be reversed unless the reviewing court, taking all the evidence in favor of the prevailing party and giving him the benefit of all inferences that can be fairly drawn from the evidence, finds that no reasonable juror could have returned a verdict in his favor. Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir.1993), cert. denied, 114 S.Ct. 443 (1993). After reviewing the record thoroughly, we find that the case at bar is one of those rare cases in which no reasonable juror could have found in favor of Butler. Accordingly, the district court's decision should be reversed on the ground of insufficient evidence.
 
 
 25
 In order to establish fraud, North Carolina[4] law requires the plaintiff to prove that: (1) the defendant made a false representation of a past or existing fact, (2) the defendant had knowledge that the representation was false when made or that it was recklessly made without any knowledge of its truth and as a positive assertion, (3) the defendant made the false representation with the intent that it be relied upon by the plaintiff, and (4) the plaintiff was injured by reasonably relying on the false representation. Britt v. Britt, 320 N.C. 573, 359 S.E.2d 467, 471 (1987). Additionally, the misrepresentation must have been made with an intent to deceive. Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 323 N.C. 559, 374 S.E.2d 385, 391-92 (1988). North Carolina courts have repeatedly held that evidence that a promise was not fulfilled is not sufficient by itself to support a finding of fraud "unless the evidence shows the promisor made the promise with no intention of fulfilling it." Britt, 359 S.E.2d at 471 (emphasis added). Indeed, generally, a promissory misrepresentation will not support an allegation of fraud in North Carolina unless the promise was made with an intent to deceive, and unless at the time of making the misrepresentation, the defendant had no intention of performing his promise. Leake v. Sunbelt Ltd. of Raleigh, 93 N.C.App. 199, 377 S.E.2d 285, 289 (1989), review denied, 324 N.C. 578, 381 S.E.2d 774 (1989). Mere proof of nonperformance alone is not sufficient to establish the necessary fraudulent intent. Britt, 359 S.E.2d at 471 (finding that there was no fraud in a case in which an oral promise to issue stock was made, and where the only evidence that there was no intent to carry through on that promise was the fact that the stock was never issued).
 
 
 26
 Additionally, North Carolina courts have held that a fraudulent misrepresentation, in order to be actionable, must be of a subsisting or ascertainable fact. Spartan Leasing Inc. v. Pollard, 101 N.C.App. 450, 400 S.E.2d 476, 478 (1991). Generally, the misrepresentation must be definite and specific, "but the specificity required depends upon the tendency of the statements to deceive under the circumstances." Id. at 479, quoting Ragsdale v. Kennedy, 286 N.C. 130, 209 S.E.2d 494, 500 (1974). Additionally, North Carolina courts have held that one to whom a "definite" representation has been made is entitled to rely on that representation only if it is of such a character as to induce action by a person of "ordinary prudence" and is reasonably relied upon. Spartan Leasing, 400 S.E.2d at 479. For purposes of evaluating whether that element of fraud is satisfied, "[a] person signing a written instrument is under a duty to read it and ordinarily is charged with knowledge of its contents." Id. In evaluating whether the elements of fraud were sufficiently proven here, we must determine whether any reasonable juror could have found in favor of the plaintiff. In doing so, all reasonable inferences of the evidence should be construed in favor of the prevailing party--here, Butler. Trandes Corp., 996 F.2d at 660. Even under that stringent standard, however, it is apparent that the district court's denial of Winner's Rule 50(b) motion should be reversed, because there does not exist sufficient evidence of fraud on the record justifying the district court's decision. At trial, Butler alleged that several misrepresentations had been made to him which induced him to enter into the sale of assets agreement; after a thorough evaluation of the record, however, we conclude that the facts do not suggest that such misrepresentations were made.
 
 
 27
 Butler first argued at trial that Winner misrepresented to him that if he signed the sale of assets contract, he would be ensured a three-year employment contract with Winner. Nowhere in the record, however, does Butler confirm that such a representation was ever made to him. Indeed, the relevant representations made to Butler that he would be hired were made in the sale of assets agreement itself, which specifically stated that, although Winner agreed to offer contracts of employment to Butler and three other persons, the "obligations of this [sale of assets] Agreement shall not be conditioned upon rejection or acceptance of said employment obligations." Under the plain language of the contract, therefore, Butler could not allege that he was fraudulently induced to enter into the sales of assets agreement only because of misrepresentations made about his employment prospects with Winner because: (1) the case law in North Carolina suggests that, in a fraud case, "[a] person signing a written instrument is under a duty to read it and ordinarily is charged with knowledge of its contents," Spartan Leasing, 400 S.E.2d at 479, thus suggesting that the disclaimer about Butler's employment prospects was binding in the instant case; (2) Butler was in fact hired under a three-year employment contract with Winner; and (3) Butler put forth no credible evidence that Winner promised him, apart from the employment agreement itself, that it would hire him only if he signed the sale of assets agreement. Moreover, the case law clearly holds that promissory misrepresentations are only actionable if at the time of the promise, the promisor intended never to perform; here, Butler put forth only conclusory evidence of such intent.
 
 
 28
 Likewise, Butler also alleged at trial, without setting forth any evidence in the record in support, that he was fraudulently induced by promises that his personal guarantee of the SBA loans would be paid off by Winner if he signed the sale of assets agreement. Throughout the record, however, it is clear that Butler is unable to point to any time at which Winner agreed to pay off Butler's SBA loan guarantee.[5] Moreover, the terms of the sale of assets agreement itself set forth expressly that "[a]ny existing debts incurred before the Closing shall be the sole responsibility of SELLER. More specifically, SELLER shall be responsible for ... any amounts owing to SELLER's creditors for inventory ordered, purchased or acquired prior to the Closing Date...." In light of the uncontroverted evidence and the express terms of the contract, we thus conclude that Butler simply failed to put forth any credible facts to support his contention that he was fraudulently induced to sign the sales agreement by Winner's alleged promise to pay off his debts.
 
 
 29
 Last, Butler's only viable claim of fraudulent inducement is that Winner promised him that it would maintain parallel operations once TEG's assets were purchased so that TEG's independent customer base would continue to flourish. Even if that alleged misrepresentation was actually made, however, the case law suggests that the mere nonperformance alone of a promissory misrepresentation is not sufficient to establish that those statements were made with an intent to deceive, such that it amounts to actionable fraud. See Britt, 359 S.E.2d at 471. More important, even if those misrepresentations were fraudulently made with an intent to deceive, it is unclear that Butler was harmed in any way; only TEG could have been harmed by Winner's alleged failure to carry on parallel operations as allegedly promised.
 
 
 30
 A thorough reading of the record reveals that the jury's finding of fraudulent inducement simply is unsupported by the facts. Therefore, even taking all reasonable inferences in favor of Butler, we reverse the district court's denial of Winner's Rule 50(b) motion on the fraud claim.[6]
 
 II. Breach of Employment Contract
 
 31
 Having disposed of the fraud claim and its dependent punitive damages claim, we turn to Butler's claim that Winner breached the employment contract with Butler. Winner asserts on appeal that the district court erred in finding that it breached the employment agreement into which it entered with Butler. In particular, Winner alleges that: (1) the employment agreement explicitly allowed Winner to terminate Butler's employment without cause, and (2) the jury's $347,000 award for breach of contract was speculative and against the clear weight of the evidence. Finding that there is substantial evidence in the record to support the jury's findings on this claim, we affirm the decision in favor of Butler. Several considerations compel an affirmance of the district court's decision on this claim.
 
 
 32
 First, Winner raises on appeal, a new theory of breach of contract that was not raised before the district court. In particular, Winner alleges that the district court abused its discretion in refusing to grant Winner a new trial on the breach of contract claim because Paragraph 6 of the employment agreement explicitly reserves the right to Winner to terminate Butler's employment without cause, subject only to a provision for severance pay. Paragraph 6 of the employment contract provides, in pertinent part:
 
 
 33
 In the event the Company shall determine that this Agreement and the employment of the Employee should not be renewed at the end of the Term or should be terminated (other than pursuant to Sections 4 or 5 of this Agreement), then the Employee's employment shall terminate on the date fixed in a notice given to the Employee.... In this event, the Employee shall be paid his base salary as provided in Section 3.1 for the remainder of the Term, if applicable, and as severance, for a period of six months following expiration of the Term....
 
 
 34
 Winner contends, on appeal, that, based on that provision of the contract, the contract was not breached since it expressly reserved to Winner a right to terminate Butler without cause, before the end of his three-year employment term. That argument is not persuasive.
 
 
 35
 First, throughout the trial and, indeed, through all the proceedings below, Winner alleged that its termination of Butler was justified under paragraph 5 of the employment contract which provides that termination is permissible if the employee, Butler, engaged in misconduct. Indeed, the defense theory throughout trial was that Butler's termination was permissible in light of Butler's alleged misconduct during his six months in Winner's employment--specifically, his efforts to compete with Winner's business in contravention of the non-compete clause of the employment agreement. At trial, Winner never put forth the alternative theory that Butler's firing was permissible under paragraph 6 of the contract, which provides for termination without cause. Thus, Winner cannot now, on appeal, for the first time allege that its termination was without cause under paragraph 6 of the employment agreement, and thus controlled by that provision. The basic principles of judicial economy dictate that a theory not raised at trial cannot now be raised on appeal. Agra, Gill & Duffus, Inc. v. Benson, 920 F.2d 1173, 1176 (4th Cir.1990).
 
 
 36
 Second, and related, Winner does not argue its original defense theory on appeal--that is, Winner does not argue on appeal that its termination of Butler was justified under paragraph 5 of the employment contract because Butler was engaging in competitive behavior in violation of the contract. Thus, Winner appears not to challenge the jury finding on its original defense theory and instead has belatedly, on appeal, put forth a new one. There appears to be no evidence in the record indicating that Butler was engaging in any misconduct that would justify his firing under paragraph 5. The jury finding on that issue should therefore be left undisturbed.
 
 
 37
 Third, as noted above, a reviewing court should not reverse a district court's denial of a motion for a new trial or a post-verdict motion for a judgment as a matter of law if, taking all factual inferences in favor of the prevailing party, it can conclude that a reasonable juror could have found in favor of that party. In the instant case, after reviewing the entire record, we find that there is sufficient evidence suggesting that Winner breached its employment contract such that the district court's decision should not be reversed on appeal. Taking all reasonable inferences in favor of Butler, the district court's denial of the Rule 50(b) motion should be upheld.
 
 
 38
 Last, there is no reason to set aside the $347,000 jury award on the breach of contract claim because it accurately reflects what Butler would have received for the remainder of his term of employment under the express provisions of the employment contract. Indeed, the contract provided that Butler was to receive a base salary of $21,000 for the first six months, that the base salary would be increased at the end of six months, and that it would be raised again at the end of the first year by an amount which Winner would negotiate in good faith. Additionally, the contract provided for an annual performance bonus not to exceed 50 percent of Butler's salary, which Butler was never paid, and also provided that Winner would pay Butler a bonus equal to 7 percent of the gross profits of Winner Technologies. Moreover, the contract provided that Butler would be reimbursed for his moving expenses, for which he was never paid by Winner. In light of the appropriate calculations, the $347,000 award to Butler was wholly proper as a means of compensating him for the loss of his three-year employment contract with Winner. This is not the type of speculative jury award that should be set aside on a motion for judgment notwithstanding the verdict or on a motion for new trial. The determination of damages is generally left to the sound discretion of the jury, and such an award should stand unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon false evidence, or it will result in a miscarriage of justice. Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir.1994). Because none of these considerations are relevant here, the award was properly determined by the jury in light of the express terms of the employment agreement, and should be left undisturbed.
 
 
 39
 Accordingly, we reverse and remand with instructions to eradicate the fraudulent inducement claim award and the punitive damages award. We affirm the breach of contract award.
 
 
 40
 REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.
 
 
 
 [1]
 By contrast, Butler was a party to the employment contract
 
 
 [2]
 On a related point, the jury instructions to which Winner objects simply did not suggest to the jury that Butler was bringing the fraud claim as a shareholder or on behalf of TEG. Indeed, the district court, in instructing the jury on the relevant issues, asked the jury specifically, "if the defendant fraudulently induced the plaintiff to enter into the ... contract, was defendant's conduct a substantial factor in bringing about the harm to the plaintiff? " Thus, the district court made completely clear that Butler's fraud claim was not based on fraud done to TEG as an entity, but on fraudulent misrepresentations made to Butler in his individual capacity as the signer of the contract
 
 
 [3]
 We do not address Winner's contention that the district court erroneously admitted Butler's testimony concerning oral statements allegedly made by Winner because regardless of whether the parole evidence barred the introduction of such testimony, we conclude that there is insufficient evidence in the record to permit a reasonable juror to conclude that Butler was defrauded
 
 
 [4]
 The choice of law questions in the case were largely left unaddressed by both parties. The sale of assets contract, by its express provisions, provides that it is controlled by North Carolina law. The employment contract states that it is controlled by Pennsylvania law. As to the fraud claims arising from both contracts, however, the choice of law clauses in the contracts do not necessarily govern. Indeed, on a claim of fraudulent representation in a business transaction, North Carolina, the forum state, should apply the law of the state with the greatest contact with the issues raised--that is, the state in which the supposed misrepresentations were made. Santana, Inc. v. Levi Strauss & Co., 674 F.2d 269, 272-74 (4th Cir.1982). Thus, it appears that North Carolina law, and not Pennsylvania law, should apply to the fraud claim
 
 
 [5]
 None of the joint appendix pages to which Butler has cited in his Brief establishes that any misrepresentations were made to that effect. In fact, some of those pages specifically contain testimony in which Butler conceded that the misrepresentations were not made. E.g., JA at 230
 
 
 [6]
 Because there is no actionable fraud here, it is unnecessary for us to investigate Winner's claim that the dependent punitive damages award amounted to a violation of the Due Process Clause of the Constitution