HARRY C. SISKRON, d/b/a CITY PLUMBING COMPANY v. TEMEL-PECK ENTERPRISES, INC., HENDERSON BELK, AND W. DAVID TEMEL

No. 7526SC217

(Filed 2 July 1975)

Unjust Enrichment— improvements to hotel — contract with lessee —liability of owner — opportunity to reject benefits

The owner of a hotel is not liable under the theory of unjust enrichment for plumbing materials and services furnished to the lessee, whom the plumbing contractor believed to be the owner, upon the owner's reentry of the premises after the lessee's default where the owner was not given an opportunity to reject the benefits in advance of their bestowal since the owner could properly assume that the lessee was making the repairs pursuant to its covenants in the lease and that the contractor was looking to the lessee for payment, and where the owner did not have the opportunity to return the benefits conferred prior to his reentry since they could not feasibly be removed without closing down the hotel.

APPEAL by plaintiff from Alvis, Judge. Judgment entered 19 December 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 May 1975.

This is a civil action in which plaintiff seeks to recover damages from defendants for materials and labor provided by the plaintiff pursuant to a contract between the plaintiff and defendants Temel-Peck Enterprises, Inc., and W. David Temel, said contract relating to the renovation of the Barringer (now

Cavalier) Inn in Charlotte. Specifically, the plaintiff sought $10,623.52 in damages for plumbing materials and services and the enforcement of a materialmen's lien. When the case came on for trial the plaintiff voluntarily dismissed the defendants Temel-Peck Enterprises, Inc., and W. David Temel without prejudice and further consented to an order dismissing his lien. The case was tried without a jury and was limited to the sole issue of unjust enrichment.

Basically, the plaintiff alleged that as a contractor, he furnished labor and materials to Temel-Peck, the lessee of the Cavalier Inn, whom plaintiff mistakenly believed to be the owner, that as a result and due to defendant Belk's subsequent reentry upon the premises after Temel-Peck's default, Belk became unjustly enriched by plaintiff's services, thereby entitling plaintiff to relief.

On 18 September 1971, an article appeared in the "Charlotte Observer" stating that the Barringer Inn had been sold by defendant Belk to Temel-Peck Enterprises, Inc., which would take control of the hotel effective October 1. Plaintiff read this article.

On 28 September, Temel-Peck Enterprises, Inc., and Henderson Belk executed a lease whereby Temel-Peck leased the hotel for a term of three years with an option to purchase. In pertinent part, the lease provided as follows:

" '7. MAINTENANCE AND USE

* * *

'(c) The Lessee shall, at its own expense, keep the premises clean and neat, and shall make all necessary and appropriate repairs and replacements to the premises and all parts thereof, both exterior and interior, structural or non-structural. . . .

* * *

'9. COVENANTS OF LESSEE

'Lessee covenants that as to the demised premises and free of expense to Lessor it shall:

* * *

'(c) Keep and maintain the improvements, equipment, fixtures and furnishings in good repair.

* * *

'16. DEFAULT.

* * *

'If an event of default . . . shall occur, Lessor shall have the right, on notice, immediately to cancel the lease and the lease shall immediately terminate. Lessor shall have the immediate right to re-enter and repossess the demised premises, and in such event of re-entry, Lessor shall ipso facto become vested with fee simple title to all furnishings, improvements, and fixtures upon the demised premises, free of all liens and rights of Lessee. . . ."

On 4 October 1971, plaintiff received a telephone call from David Temel, President of Temel-Peck Enterprises, Inc., who told plaintiff that he had purchased the Inn and requested that plaintiff do some work for him. A verbal contract was entered providing for repair and remodeling services including the installation of certain plumbing fixtures. At the end of the first month of work, plaintiff submitted a bill to Temel-Peck for services and was paid in due course. Thereafter, a check was received dated 3 January 1972, but payment was stopped; so plaintiff withdrew from the job on 7 January, when $10,623.52 was due for labor and materials.

Plaintiff's supervising employee on the job was told by David Temel that he had purchased the property and was further told the same thing by someone who represented himself to be Frank Wilson, Vice-President of Henderson Belk Enterprises. It was established at trial that the person making this latter statement was not in fact Frank Wilson but was someone else who could not be named or identified. Defendant Belk stipulated that he knew that plaintiff was furnishing repair and remodeling services to Temel-Peck over the entire period to January 7 and that he retained office facilities in the hotel during that period.

It was stipulated that on 6 January 1972, the defendant Belk reentered and assumed possession upon default of Temel-Peck. On two occasions thereafter plaintiff performed services for the defendant Belk on the hotel on a COD basis.

The trial court rendered judgment holding against the plaintiff on the issue of unjust enrichment and the plaintiff appealed.

*Hamel, Cannon & Hamel, P.A., by I. Manning Huske and Reginald S. Hamel, for the plaintiff.*

*Weinstein, Sturges, Odom, Bigger and Jonas, P.A., by John J. Doyle, Jr., for the defendant.*

CLARK, Judge.

When one person confers a benefit upon another which is not required by a contract either express or implied or a legal duty, the recipient thereof is often unjustly enriched and will be required to make restitution therefor. However, this rule is not the case where the person conferring the benefit is a volunteer or intermeddler or where the person conferring the benefit does so without affording the recipient an opportunity to reject the benefit. See D. Dobbs, Remedies, § 4.9 (1973). This latter principle called the "choice principle," does not apply, however, with absolute rigidity but yields at times to special situations cognizable in equity which override a defendant's right of free choice. Nevertheless, it has been said that:

> "Where a plaintiff in the performance of his own duty incidentally confers a benefit on the defendant, it is usually held that restitution is not available. Thus, where one in possession of land hires the plaintiff to put an improvement on it, the fact that this inures to the benefit of the owner does not create liability to make restitution." Wade, Restitution for Benefits Conferred Without Request, 19 Vand. L. Rev. 1183, 1204 (1966).

Further,

> "A person is ordinarily not required to pay for benefits which were thrust upon him with no opportunity to refuse them. The fact that he is enriched is not enough, if he cannot avoid the enrichment." Wade, Restitution for Benefits Conferred Without Request, 19 Vand. L. Rev. at 1198 (1966).

The concept of the "choice principle" finds cognizance in this State in *Homes, Inc. v. Holt*, 266 N.C. 467, 146 S.E. 2d 434 (1966), wherein the plaintiff-contractor contracted with defendant's mother for the construction of a house upon a lot which was represented by the mother to be owned by her. As it turned out, the plaintiff was mistaken as to the ownership of the lot as it was actually owned by the defendant. The defendant there-

after refused to allow the plaintiff to remove the house from the lot and refused to pay for the improvement. It was held that ". . . where through a reasonable mistake of fact one builds a house upon the land of another, the landowner, electing to retain the house upon his property, must pay therefor. . . ." *Homes, Inc. v. Holt, supra,* at 474. As is apparent from the above case, the defendant had the "choice" of either allowing plaintiff to remove the house or retaining it. Having elected to retain it, equity required her to pay since she had the choice of returning the benefit conferred even though she could not reject the benefit in advance of its bestowal.

Applying these principles to the facts in the present case, we fail to discern that the defendant Belk was ever given an opportunity to either reject the benefits in advance of their bestowal or to return them after they had been conferred. Under the lease to Temel-Peck Enterprises, Inc., the lessee covenanted to ". . . keep and maintain the improvements, equipment, fixtures and furnishings in good repair," and ". . . make all necessary and appropriate repairs and replacements to the premises." Even though Belk was aware that repairs were being made, it was perfectly proper for him to assume that Temel-Peck was making them pursuant to its covenants in the lease and that the contractor was looking to the lessee for payment, which he in fact was. It would be unreasonable to place upon every lessor of substantial leasehold property the duty of policing every expenditure made for repairs by a lessee who is required under the lease to make repairs. Under the circumstances, the defendant had no opportunity to reject the benefits conferred in advance.

The next question is whether defendant Belk had an opportunity to return in specie the benefits conferred prior to his reentry into the property in January 1972. The answer to this is simply in the negative as the plaintiff personally admitted that the improvements and repairs could not feasibly be removed without closing down the hotel.

We find no special circumstances present in this case which would override Belk's freedom of choice and coerce liability for the benefits conferred upon him. The plaintiff relies upon his good faith, reasonable belief that Temel-Peck was the owner, and Belk's inaction after the newspaper article previously referred to was published as grounds for liability. He further contends that the evidence that someone representing himself

to be Belk's vice president told his agent that Temel-Peck owned the hotel is probative of an innocent misrepresentation by Belk. We fail, however, to see how the representations of an unidentified person amount to any kind of representation on Belk's part. Furthermore, there was no evidence whatsoever that Belk was ever aware of plaintiff's mistaken belief as to the ownership of the property. In any event, it is not clear whether ownership in Belk as opposed to Temel-Peck would have made any difference to the plaintiff when he originally formed the contract with Temel-Peck. Under these circumstances, the general rule of equity applies and the defendant Belk, having had no suitable opportunity to accept or decline the benefits, could not be held liable in restitution for the benefits conferred. See generally, *LaChance v. Rigoli,* 325 Mass. 425, 91 N.E. 2d 204 (1950) ; *Chatfield v. Fish,* 126 Conn. 712, 10 A. 2d 754 (1940) ; and *Kennedy v. Nelson,* 37 Ala. App. 484, 70 So. 2d 822 (1954).

For the foregoing reasons, we find

No error.

Judges MARTIN and ARNOLD concur.