**Kourosh A. DASTGHEIB, Plaintiff,**

v.

**GENENTECH, INC., Defendant.**

**Civil Action No. 04–1283.**

United States District Court, E.D. Pennsylvania.

Oct. 27, 2006.

Brady J. Fulton, John C. Janka, Paul K. Vickrey, Raymond P. Niro, Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, Sheldon Kivell, William H. Ewing, Eckert Seamans

Cherin & Mellott, Philadelphia, PA, for Plaintiff.

Craig A. Benson, Kenneth A. Gallo, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, DC, Daniel J. Anders, Laurence Z. Shiekman, Stacey I. Gregory, Pepper Hamilton, LLP, Philadelphia, PA, John Vagelatos, Maria T. Vullo, Ryan M. Kantor, Paul Weiss Rifkind Wharton & Garrison LLP, New York City, for Defendant.

## MEMORANDUM

ROBRENO, District Judge.

Before the Court is Genentech, Inc.'s Motion for Judgment of Dismissal or in the Alternative to Strike Plaintiff's Jury Demand on the Unjust Enrichment Claim[1] (doc. no. 183). Resolution of the motion turns on whether the unjust enrichment claim is legal or equitable. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

The relevant facts in this case are as follows.[2] Dr. Kourosh A. Dastgheib ("Dastgheib"), an ophthalmologist, alleges that he provided certain human tissue samples and research materials to Genetech, Inc. ("Genetech"), a biotechnology company, after Genentech represented that it would give Dastgheib recognition in the medical and scientific community for his scientific discovery, as well as one percent of gross sales of any drug that Genentech developed using Dastgheib's research. Dastgheib further alleges that he sent Genentech the requested research materi-

1. This memorandum explains the basis of the Court's earlier ruling denying the motion (see doc. no. 263).

2. The Court described the facts and background of this case in significant detail when deciding Genentech's motion for summary judgment in *Dastgheib v. Genentech, Inc.*, 2006 WL 120052, at *1–2 (E.D.Pa. Jan. 13, 2006).

als and that Genentech developed a drug using them, but that Genentech does not intend to give him any portion of the gross revenues nor any express recognition for his scientific discoveries.

As part of his action against Genentech, Dastgheib asserts a claim for unjust enrichment,[3] which he described in his complaint as follows:

> Genentech stands to gain astronomically from Dr. Dastgheib's discovery ..., while Dr. Dastgheib, without the protection to which he is entitled by law, will not participate in the fruits of his efforts. Genentech has been unjustly enriched. *Dr. Dastgheib is entitled to damages commensurate with the benefit conferred upon Genentech.*

Pl.'s Compl. at ¶¶ 48–50 (doc. no. 1) (emphasis added).

Under North Carolina law, which applies to Dastgheib's claims in this case, "[w]hen one [party] confers a benefit upon another which is not required by a contract ..., the recipient thereof is often unjustly enriched and will be required to make restitution therefor." *Siskron v. Temel–Peck Enterprises,* 26 N.C.App. 387, 216 S.E.2d 441, 444 (1975). Moreover, throughout the proceedings in this case, Dastgheib has made clear that he seeks, as a measure of the benefit Dastgheib conferred upon Genentech, the disgorgement of Genentech's profits derived from its use of Dastgheib's research materials. Thus, in the Court's memorandum in support of its denial of Genentech's motion for summary judgment, the Court stated:

> The Court finds that it appears that plaintiff's remedies under the unjust enrichment theory are not necessarily limited to the fair market value of the tissue samples and methodologies and the reasonable value of his time and expenses in procuring them. Rather, under North Carolina, in certain circumstances, defendant's profits may be available in a claim for unjust enrichment.

*Dastgheib v. Genentech, Inc.,* 2006 WL 120052 at *8–9 (E.D.Pa. Jan.13, 2006).

In discussing Genentech's subsequent motion to exclude the testimony of Dastgheib's expert regarding unjust enrichment damages, the Court further elaborated on the nature of Dastgheib's unjust enrichment claim, stating that:

> [T]he jury will be asked to evaluate the appropriate damages remedy in light of the purposes of unjust enrichment—to disgorge the profits that would be inequitable for defendant to retain—and in making that determination, the jury may consider numerous equitable factors, including but not limited to, the relative extent of plaintiff's contributions.

*Dastgheib v. Genentech, Inc.* 438 F.Supp.2d 546, 552 (E.D.Pa.2006).

This exposition of Dastgheib's claim is consistent with North Carolina law. Under North Carolina law, the kind of restitution that Dastheib seeks "is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Booher v. Frue,* 86 N.C.App. 390, 358 S.E.2d 127, 129 (1987). "A plaintiff may receive a windfall in some cases, but this is acceptable in order to avoid any unjust enrichment on the defendant's part." *Id.*

Thus, it is conceivable that at trial a jury could find that Dastgheib's unjust enrichment claim entitles Dastgheib to a sum of damages that are greater than his poten-

---

**3.** Dastgheib initially had a contract claim, which he dropped, and so there is no contract claim in this case.

tial damages for fraud and unfair and deceptive practices. Unlike unjust enrichment, the purpose of these latter claims is to place "plaintiff in the same position as if the fraud had not been practiced upon him." *Godfrey v. Res–Care, Inc.,* 165 N.C.App. 68, 598 S.E.2d 396, 404 (2004).

On the eve of trial,[4] Genentech brought the instant motion to dismiss that claim. Arguing that unjust enrichment is an equitable claim, Genentech contends that Dastgheib should be barred from maintaining this type of claim because he has an adequate remedy at law, namely, his claims of fraud and violation of North Carolina's Unfair and Deceptive Trade Practices Act.[5] Genentech also asks, alternatively, to strike plaintiff's jury demand with respect to the unjust enrichment claim because equitable claims are not triable to a jury.

## II. DISCUSSION

### A. *Legal Standards*

The premise of both Genentech's arguments is that Dastgheib's claim for unjust enrichment seeking disgorgement of profits is an equitable claim. Therefore, first and foremost, the Court will examine whether that claim is legal or equitable.

■ "In diversity cases, of course, the substantive dimension of the claim assert-ed finds its source in state law, . . . but the characterization of that state-created claim as legal or equitable . . . must be made by recourse to federal law." *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *Heater v. Kispeace,* 2005 WL 2456008 at *5 (E.D.Pa. Oct.05, 2005). Fortunately, the Supreme Court has visited this issue at some length in the recent past.

■ In *Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), the Supreme Court succinctly reiterated the two-part used to determine if a claim is equitable or legal:

> First, we compare the [action at issue] to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.[6] Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

*Id.* at 565, 110 S.Ct. 1339. The second prong, the remedy sought, is "always given more weight than the nature of the analogous right." *Teamsters,* 494 U.S. at 559, 110 S.Ct. 1339.

*Teamsters* involved employees who sought back-pay owed by their employer because of their union's alleged breach of

---

4. The Court notes that Dastgheib believes that Genentech is in violation of the Court's scheduling order in bringing this motion as the motion is, in essence, one for summary judgment in disguise. The Court agrees that Dastgheib's procedural objection also has merit.

5. Under North Carolina law, the "court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff," and "equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Embree Constr. Group, Inc. v. Rafcor, Inc.,* 330 N.C. 487, 411 S.E.2d 916, 920 (N.C.1992) (holding that North Carolina courts will dismiss equity claims where there is a "full and complete remedy at law").

6. Of course, in eighteenth-century England, there were two court systems simultaneously in existence: the older courts of law that administered the law and the Court of Chancery that administered equity in the sense of "providing flexible approaches where the law had become too rigid." Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution,* § 2.1. Today, however, there has long since been a merger of law and equity courts so that trial courts of general jurisdiction exercise both "law" powers and "equity" powers. *Id.* at § 2.6.

its duty of fair representation[7]. *Id.* at 574, 110 S.Ct. 1339. In determining whether the employees had a right to trial by jury, the Supreme Court analogized their action, which did not exist in eighteenth-century England, to a hybrid of: (1) "an action by a trust beneficiary against a trustee for breach of fiduciary duty which was within the exclusive jurisdiction of courts of equity"; and (2) "a breach of contract claim—a legal issue." *Id.* at 569–70, 110 S.Ct. 1339. As to the second, more important prong, the Supreme Court held that the money damages the union members sought were the type of relief traditionally awarded by courts of law. *Id.* at 573, 110 S.Ct. 1339. On this basis, the Supreme Court held that the union members were entitled to a jury trial because the duty of fair representation action was legal in nature. *Id.* at 574, 110 S.Ct. 1339.

In two subsequent cases, the Supreme Court confirmed the appropriateness of the two-part test, stating that whether a remedy "is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 213, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal citations and quotations omitted); *Sereboff v. Mid Atlantic Medical Services, Inc.,* —— U.S. ——, ——, 126 S.Ct. 1869, 1874, 164 L.Ed.2d 612 (2006).

In *Great–West,* the fiduciary of a health plan brought an action under the Employee Retirement Income Security Act (ERISA) plan to compel a plan beneficiary who recovered from a third-party tortfeasor to make restitution to the plan for benefits that it paid to the beneficiary.

The fiduciary specifically sought relief under ERISA § 502(a)(3)(B) "to obtain ... appropriate equitable relief ... to enforce ... the terms of the plan." 534 U.S. at 215, 122 S.Ct. 708. The Supreme Court thus faced the question as to whether the relief the fiduciary had requested was "equitable." *Id.*

In response to the fiduciary's argument that its claim was for "restitution" and thus equitable under § 502(a)(3)(B), the Supreme Court noted that "not all relief falling under the rubric of restitution [was] available in equity." *Id.* at 212, 122 S.Ct. 708. To decide whether the restitutionary relief sought by the fiduciary was equitable or legal, the Court examined cases and secondary legal materials to determine if the relief would have been equitable "[i]n the days of the divided bench." *Id.* The Court explained that one feature of equitable restitution was that it sought to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession." *Id.* at 213, 122 S.Ct. 708.

In *Great–West,* the relief sought was not equitable because "the funds to which petitioners claim[ed] an entitlement" were not in the beneficiary's possession, but had instead been placed in a "Special Needs Trust" under California law. *Id.* at 207, 122 S.Ct. 708. The kind of relief the fiduciary sought, therefore, was "not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that [the fiduciary] conferred upon [the beneficiary]." *Id.* at 214, 122 S.Ct. 708. The Court accordingly determined that the suit could not proceed

---

**7.** The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 563, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (internal quotation omitted).

under § 502(a)(3) because the basis of the fiduciary's relief was not equitable. *Id.*

The second case, *Sereboff,* also involved a fiduciary seeking reimbursements for amounts a health plan paid for medical expenses of beneficiaries, who were injured in automobile accident, from proceeds of the beneficiaries' settlement with third party tortfeasors. 126 S.Ct. at 1869. There, the Supreme Court held that the "impediment to characterizing the relief in [*Great–West*] as equitable is not present here," because the fiduciary sought "specifically identifiable" funds that were "within the possession and control of the [beneficiaries]—that portion of the tort settlement due the [fiduciary] under the terms of the ERISA plan, set aside and 'preserved [in the beneficiaries'] investment accounts." *Id.* at 1874. Moreover, the Court explained, unlike the fiduciary in *Great–West,* the fiduciary in *Sereboff* "did not simply seek 'to impose personal liability . . . for a contractual obligation to pay money.'" *Id.* (citing *Great–West,* 534 U.S. at 210, 122 S.Ct. 708). "It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [beneficiaries'] assets generally, as would be the case with a contract action at law." *Id.*

In *Sereboff,* the Supreme Court noted that although the fiduciary had successfully shown that the *relief* it sought was equitable, the fiduciary also had to show that the *basis for its claim* was likewise equitable. *Id.* In that regard, the Court cited to *Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), where two attorneys performed work for a third attorney who promised them "one-third of the contingent fee" he expected in the case. *Id.* at 119, 34 S.Ct. 276. In upholding the two attorneys' equitable claim to this portion of the fee, Justice Holmes recited "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 121, 34 S.Ct. 276. On the basis of this rule, he concluded that the third attorney's undertaking "create[d] a lien" upon the portion of the monetary recovery due Barnes from the client, *id.,* which the two attorneys could "follow . . . into the hands of [the third attorney] as soon as [the fund] was identified," *id.* at 123, 34 S.Ct. 276.

Applying the principles distilled from *Barnes* to the facts presented in *Sereboff,* the Supreme Court found that, much like the third attorney's promise to the first two attorneys, the provision in the beneficiaries' plan specifically identified a particular fund, distinct from the beneficiaries' general assets—"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"—and a particular share of that fund to which the fiduciary was entitled—"that portion of the total recovery which is due [the fiduciary] for benefits paid." *Sereboff,* 126 S.Ct. at 1875. Like the two attorneys in *Barnes,* therefore, the fiduciary "could rely on a 'familiar rul[e] of equity' to collect for the medical bills it had paid on the [beneficiaries'] behalf." *Id.*

### B. *Application*

Pursuant to the two-part test that the Supreme Court applied in *Teamsters, Great–West,* and *Sereboff,* to determine whether Dastgheib's unjust enrichment claim is legal or equitable, the Court must examine: (1) the basis of the claim; and (2) the nature of the remedies that Dastgheib seeks.

### 1. *The basis for Dastgheib's unjust enrichment claim*

The line separating legal from equitable claims is more nice than bright. *Cf. Fotta*

*v. Trusts. of the United Mine Workers,* 165 F.3d 209, 213–214 (3d Cir.1998) ("Restitution—the traditional remedy for unjust enrichment—is widely, if not universally, regarded as a tool for equity.") *with Great–West Life,* 534 U.S. at 213, 122 S.Ct. 708 (2002) ("not all relief falling under the rubric of restitution is available in equity"). In reality, restitution straddles the divide between legal and equitable relief and is not merely an exclusively equitable remedy. *Reich v. Cont'l Cas. Co.,* 33 F.3d 754, 756 (7th Cir.1994) (Posner, J.). As such, it is notably difficult to ascertain when a claim for restitution is "distinctly legal and when it is distinctly equitable." *See Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.,* No. 02–3293, 2005 WL 2405797 *2 n. 1 (N.D.Ill. Sept. 28, 2005) (internal quotation omitted). "[R]estitution is a legal remedy when ordered in a case at law and an equitable remedy … when ordered in an equity case." *Reich,* 33 F.3d at 756.

The reason for the ambivalence regarding the nature of unjust enrichment is easier to understand once its labyrinthian history is examined. The modern formulation of the term "unjust enrichment" is actually the scholarly creation of the American Law Institute ("ALI"). In the Restatement of Restitution, drafted in 1937, the ALI synthesized principles derived from both courts of law and courts of equity stating as its first general principle that "[a] person who has been *unjustly enriched* at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937) (emphasis added).[8] *See also* Emily Sherwin, *Restitution and Equity,* 79 Tex. L.Rev.

2083, 2083 (2001) ("The law of restitution, as we know it, was invented in 1937 with the publication of the Restatement of Restitution. The reporters … assembled a variety of doctrinal rules—not previously linked—which, in their view, were connected by the principle of unjust enrichment."); *James Barr and the Early Modern History of Unjust Enrichment,* 25 Oxford J. Legal Stud. 297, 297 (2005) ("the Restatement's most significant innovation—its unified treatment of law and equity, presenting quasi-contract and constructive trust as alternative responses to the problem of unjust enrichment—merely put the ALI imprimatur on discoveries announced some fifty years earlier by James Barr Ames of the Harvard Law School."). "[F]or the most part, prior to the Restatement, English and American courts deciding what we think of as restitution cases did not refer to unjust enrichment." Sherwin, *supra,* at 2083.

Because unjust enrichment is a synthesis of both law and equity principles, and was not per se available in the eighteenth-century, the Court must search for an appropriate analog to Dastgheib's unjust enrichment claim. *See Teamsters,* 494 U.S. at 565–66, 110 S.Ct. 1339 (because no action for breach of duty of fair representation existed in the eighteenth century, the court looked "for an analogous cause of action that existed in the 18th century to determine whether the nature of this duty of fair representation suit is legal or equitable").

█  In the present case, the basis of Dastgheib's unjust enrichment claim is quasi-contractual. Dastgheib contends

---

**8.** This academic debate over the nature of restitution apparently still rages within the halls of the American Law Institute. One member of Advisory Committee for the Restatement (Third) of Restitution and Unjust Enrichment recently noted that draft comments to the new Restatement deny any intention "to repudiate the traditional, equitable explanation of restitution liability" but note that "the purely equitable account of the subject is open to substantial objections." Sherwin, *supra,* at 2087.

that he provided certain research materials to Genentech in reliance on certain misrepresentations that Genentech made and that Genentech has thereby been unjustly enriched. *See Booe v. Shadrick,* 322 N.C. 567, 369 S.E.2d 554, 556 (1988). A quasi-contractual claim is akin to the assumpsit actions of eighteenth-century England, which were "indisputably 'law' cases."[9] Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution,* 378, 385 n. 8 (1993). *See also* Sherwin, *supra,* at 2086–87 ("quasi-contract remedies ... were historically granted by law courts rather than equity courts").

The most renowned eighteenth-century case of a plaintiff bringing an action in assumpsit and seeking a refund of unjustly obtained funds from a defendant is *Moses v. Macferlan,* 97 Eng. Rep. 676 (K.B.1760). In that case, Macferlan represented to Moses that, if Moses endorsed certain promissory notes over to him, Macferlan would never enforce Moses' liability on the endorsements. *Id.* After Moses endorsed over the notes, Macferlan sued Moses in the Court of Conscience, which ordered Moses to pay Macferlan on the endorsements. *Id.* Moses then brought an action at law against Macferlan in the King's Bench Court for his money's repayment. *Id.* at 677. Lord Mansfield affirmed a jury verdict in favor of Macferlan, explaining:

> This kind of equitable action, to recover back money, which ought not in justice to be kept, is very beneficial, and therefore much encouraged. It lies [where a defendant receives money through] an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money.

*Id.* at 680–81.[10] *See also Lamine v. Dorrell,* 92 Eng. Rep. 303 (K.B.1706) (where defendant took securities from plaintiff and sold them, plaintiff successfully brought action in assumpsit for recovery of money for which securities were sold).

Thus, the Court finds that because Dastheib's action is analogous to an action in assumpsit to recover money, Dastgheib's unjust enrichment claim is legal in nature.

### 2. *The nature of the underlying remedy*

The Court next turns to the nature of the underlying remedy that Dastgheib seeks. Again, this prong of the two-part test is "always given more weight than the nature of the analogous right." *Teamsters,* 494 U.S. at 559, 110 S.Ct. 1339. Here, Dastgheib seeks, as a measure of the benefit he conferred upon Genentech, money damages in the form of the disgorgement of profits Genentech derived as a result of its use of Dastgheib's materials.

"Restitution claims for money," according to a prominent authority in the law of

---

**9.** A writ of assumpsit was used when there "was no contract at all between the parties, neither express nor implied in fact. This step was taken to prevent unjust enrichment of the defendant when 'in equity and in good conscience' he should not be permitted to keep gains he had received." Dobbs, *supra,* at 385 n. 8.

**10.** Lord Mansfield's use of the term "equitable" in describing actions tried before a jury has cast a pale over the issue. However, as the scholar George E. Palmer explains, "[a]lthough Mansfield's description of quasi-contract as 'equitable' has been repeated many times, this refers merely to the way in which a case should be approached, since it is clear that the action is at law and the relief given is a simple money judgment." Palmer, *The Law Restitution,* § 1:1 at 3, § 1.2 at 9 (1978).

remedies field, "are usually claims at law." Dan B. Dobbs, *Law of Remedies: Damages—Equity—Restitution,* 370 (1993). Dobbs writes:

> Restitution claims for money are usually claims "at law." So are restitution claims for replevin and ejectment. On the other hand, restitution claims that may require coercive intervention or some judicial action that is historically "equitable," may be regarded as equitable claims. For example, if the defendant fraudulently obtained title to Blackacre from the plaintiff, the plaintiff might ask the court to declare a "constructive trust," the upshot of which would be to order the defendant to reconvey Blackacre to the plaintiff. Such a claim is restitutionary and also historically regarded as equitable.
>
> If the same plaintiff merely asked for the money value of Blackacre or the sums gained by the defendant in selling that famous property, then the claim could still be restitutionary but it would now be a claim "at law."

*Id.*

Here, Dastgheib does not seek as his remedy the return of the research materials that he provided to Genentech. Rather, he seeks a money judgment in an amount equal to that gained by Genentech in using those research materials to develop a new drug.

The Court finds these facts exceedingly more analogous to those of *Great–West* than to *Sereboff* or *Barnes.* Like the plaintiff in *Great–West,* Dastgheib does not seek "particular funds or property in the defendant's possession." 534 U.S. at 213, 122 S.Ct. 708. In fact, Genentech's future profits, which Dastgheib seeks to disgorge in whole or in part, have not yet been earned. This case is distinguishable from *Sereboff,* where the fiduciary sought money that was specifically set aside and "pre-

served [in the defendant's] investment accounts." 126 S.Ct. at 1874. Nor does this case contain facts similar to *Barnes,* where the plaintiffs sought recovery of a portion of a defined contingency fee that was to be paid to the defendant. 232 U.S. at 117, 34 S.Ct. 276.

The Court finds that the kind of relief that Dastgheib seeks is therefore "not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that [Dastgheib] conferred upon [Genentech]." *Id.* at 214, 122 S.Ct. 708.

### 3. *Other cases involving disgorgement of profits*

The cases cited by Genentech are not helpful. None of those cases appear to directly address the specific issue before the Court. The cases either mention that a claim for disgorgement is equitable, but without discussion or explanation, or discuss claims for disgorgement in the context of a public agency compelling a company to disgorge profits as a result of its wrongdoing, *see e.g., SEC v. Pardue,* 367 F.Supp.2d 773, 777 (E.D.Pa.2005).

As to the former cases, the court's general invocation of equity or equitable principles in a case does not constitute a designation of the claim asserted by the plaintiff to be an equitable one. *See, e.g., Moses,* 97 Eng. Rep. at 680; *Dastgheib,* 438 F.Supp.2d at 552 (noting "equitable factors" a jury may consider to evaluate "appropriate damages remedy" in this case). In its broadest sense, equity and equitable principles are synonymous with notions of justice, fairness, and even handed dealings. "Many wholly legal claims have equitable aspects; think of all the fiduciary duties that exist in the law of contracts or influence the resolution of tort claims." *Burns Philp Food v. Cavalea Continental Freight,* 135 F.3d 526, 528 (7th Cir.1998).

Therefore, a naked reference to equity or equitable principles does not convert a legal claim into an equitable one.

As to the latter set of cases, where public agencies have sought to compel a defendant to pay money to a third-party victim not involved in the litigation, a number of courts have explained that these cases do not control when "the plaintiff seeks money for its own coffers." *First Nat'l Bank of Waukesha v. Warren*, 796 F.2d 999, 1000 (7th Cir.1986).[11]

This distinction was applied in *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, 2005 WL 2405797 (N.D.Ill. Sept. 28, 2005). In that case, the plaintiff's unjust enrichment claim sought disgorgement and payment to the plaintiff of profits obtained by the defendant. *Id.* at *1. The defendant moved the court for a ruling that the unjust enrichment claim lay in equity, and therefore the plaintiff had no right to a jury trial. *Id.* Applying *First Nat'l Bank*, the court held that, because the plaintiff was "not acting altruistically on behalf of a third party outside of these proceedings, the characterization of disgorgement based on unjust enrichment as an equitable action does not control." *Id.* at *4. Thus, the court held that the plaintiff sought legal, rather than equitable, relief. *Id.*[12]

The reasoned decision by Judge Posner in *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 572 (7th Cir.2004) is helpful here. In *Williams*, a manufacturer sued its suppliers and a salesman for bribing its buyers to buy from them. 366 F.3d at 572. In deciding whether to send the manufacturer's claim for the defendants' profits to the jury, Judge Posner addressed the issue of whether a disgorgement of profits was a legal or an equitable claim. *Id.* at 576. Recognizing that such a claim could be awarded "in either a suit at law or a suit in equity," Judge Posner explained:

> But if all that the plaintiff is seeking is a sum of money equal to the defendant's profit, an order of restitution will do fine, and the device of a constructive trust is surplus; the device comes into its own only when the plaintiff is seeking title to specific property in the defendant's hands .... when restitution is sought in a law case and the plaintiff is not seeking to impress a lien on particular property, but just wants an award of profits, he cannot obtain a constructive trust, because there is no res (that is, no fund or other specific piece of property) for the trust to attach to. He can still get restitution in such a case, but as a legal remedy for a legal wrong, not as an equitable remedy for a legal or an equitable wrong.

*Id.* at 576–78 (internal citations omitted).

Applying *Williams* here, it is evident that Dastgheib is seeking "a sum of money equal to the defendant's profit" and thus "the device of a constructive trust is sur-

---

11. Thus, *Teamsters* is not to the contrary when it characterizes "damages as equitable where they are restitutionary, such as in actions for disgorgement of improper profits." 494 U.S. at 570, 110 S.Ct. 1339. There, the Supreme Court relied on the case of *Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) for that characterization. *Tull* involved the government bringing civil claims against a defendant under the Clean Water Act, seeking the imposition of fines and injunctive relief. *Id.* It was not a case where "the plaintiff seeks money for its own coffers," as is the case here.

12. In *Oshana v. Coca–Cola Co.*, 2005 WL 1661999 (N.D.Ill. July 13, 2005) a court held that plaintiff's unjust enrichment claim seeking disgorgement of profits was equitable. *Oshana*, however, cites as its first case for the proposition that "disgorgement is form of equitable restitution" the case of *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 U.S. Dist. LEXIS 17876, *14–15 (N.D.Ill. Sept. 1, 2004). As discussed above, in *Telewizja*, the Court ultimately held plaintiff's claim for disgorgement to be legal in nature.

**546**

plus." Dastgheib has never sought to impress a lien on particular property in Genentech's hands. He seeks a legal remedy for a legal wrong.

Although in *Williams* Judge Posner ultimately determined that the manufacturer's claim was equitable,[13] the Court is convinced that the reasoning supporting that determination would support a determination here that Dastghieb's claim is legal in both its basis and the remedy it seeks. *Accord, Rhone–Poulenc Argo, S.A. v. Monsanto Co.,* 2000 U.S. Dist. LEXIS 21330 (M.D.N.C.2000), *aff'd,* 345 F.3d 1366 (Fed.Cir.2003) (applying substantive North Carolina law, federal district court tried to the jury both the plaintiff's fraud claim and unjust enrichment claim where plaintiff sought disgorgement of profits).

### III. CONCLUSION

For the reasons set forth above, the Court holds that Dastgheib's claim for unjust enrichment under North Carolina is legal rather than equitable in nature and that, therefore, Dastgheib is entitled to a jury trial.[14]

An appropriate order has been entered.

---

**13.** In *Williams,* the manufacturer's claim "was in between." 366 F.3d at 578. Although it clearly sought a legal remedy, the "wrong for which it was seeking a remedy … was an equitable wrong, a breach of fiduciary obligation." *Id.* Because the legal conception of a trust historically grew out of the Court of Chancery, constructive trusts are the appropriate remedy where a defendant breaches a confidential or fiduciary relationship. *See* Dobbs, *supra,* at § 4.3. The Supreme Court has also recognized that "an action by a trust beneficiary against a trustee for breach of fiduciary duty [was] within the exclusive jurisdiction of courts of equity." *Teamsters,* 494 U.S. at 567, 110 S.Ct. 1339. *See also Clyde v. Hodge,* 460 F.2d 532, 535 (3d Cir.1972)

For similar reasons, where plaintiffs have sued for a defendant's profits from an alleged patent infringement, courts have held such actions to be equitable because they originate from cases which hold the patent infringer to be a trustee for the patent holder. *See, e.g., American Cyanamid Co. v. Sterling Drug, Inc.,* 649 F.Supp. 784, 786 (D.N.J.1986) (citing *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916)).

**14.** Given the resolution of this issue, the Court declines to address Genentech's remaining arguments, which are premised on the contention that the unjust enrichment claim is equitable.